UNITED STATES DISTRICT COURT
Eastern District of Kentucky
EASTERN DISTRICT OF KENTUCKY
LONDON

FILED
AUG 24 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-488-GWU

CLIFFORD CENTERS, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 CFR 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 CFR 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 CFR 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Centers

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

Centers

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

3

Centers

pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

4

Centers

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most

5

Centers

Centers

of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Clifford Centers, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of mild chronic obstructive pulmonary disease, mild non-obstructive atherosclerotic cardiovascular disease, hypertension (controlled with medication), degenerative disc disease of the lumbar spine, and bilateral L5-S1 radiculopathy. (Tr. 20). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Centers retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 23-5). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE a series of hypothetical questions. The question reflecting the ALJ's ultimate functional capacity finding asked whether an individual of the plaintiff's age, education, and work experience could perform any jobs if he were limited to light level exertion, and also had the following non-exertional impairments. He: (1) could not climb ladders, ropes, or scaffolds; (2) could occasionally crawl, stoop, or climb ramps and stairs; (3) should avoid temperature extremes, humidity, and gases; and (4) would require a sit/stand option. (Tr. 62, 64). The VE responded that there were jobs that such a

7

person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 64).

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

Mr. Centers alleged disability due to an injury to his back and left side in November, 2001, breathing problems, heart problems, and high blood pressure. (Tr. 95). He felt that he was unable to lift more than five to ten pounds occasionally, stand or sit 10 to 15 minutes, and walk only five minutes, due to a combination of back and shoulder pain and breathing problems. (Tr. 53-4, 59). His breathing became worse in hot and humid or cold weather, and continued to be a problem although he had stopped smoking in April, 2003. (Tr. 54-5). The physician who treated him for his breathing, Dr. A. Vaezy, had given him inhalers to use, but they did not help much, and he could not afford the nebulizer that the physician had recommended. (Tr. 54). He had been worked up extensively for chest pain, but only occasionally needed to use Nitroglycerin pills prescribed for him by his cardiologist, Dr. Reddy. (Tr. 55). Dr. Reddy had informed him following a cardiac catheterization that he had mild congestive heart failure, and he would be treated with medications. (Tr. 58-9). His back pain made it difficult for him to bend over to put his socks on and, although he was able to drive occasionally, Mr. Centers testified that he performed very few daily activities. (Tr. 56-7).

The plaintiff submitted a letter from Dr. Arden Marc Acob, a neurologist, dated April 7, 2004 stating that the plaintiff was being treated for L5-S1 radiculopathy and, in his opinion, Mr. Centers was unable "to work a five day eight hour work day job." (Tr. 253). No other information such as office notes, physical findings, length of treatment relationship, or specific functional limitations was provided. The ALJ indicated to the plaintiff's representative at the administrative hearing that more information was needed (Tr. 36-8), and two reports were subsequently provided. An EMG/NCV study done by Dr. Acob was interpreted as showing evidence of an L5-S1 radiculopathy bilaterally (Tr. 264-5), and a lumbar spine X-ray ordered by Acob showed some disc space narrowing consistent with degenerative disc changes of an unspecified degree (Tr. 268). The ALJ reasonably found that Dr. Acob's opinion was not adequately supported by treatment findings. (Tr. 22-3).

The medical evidence confirms that Dr. Reddy had performed extensive testing due to the plaintiff's complaints of chest pain and, after a cardiac catheterization in February, 2003, the physician stated that "in view of [the] relatively nonsignificant degree of atherosclerotic disease [I] would continue to treat him medically and emphasize strongly . . . risk factor modifications if needed." (Tr. 143). Subsequent testing included a myocardial stress test in March, 2003 which was interpreted as "mildly abnormal," and as showing a moderate exercise tolerance. (Tr. 152-3). After Mr. Centers complained of increasing edema and episodes of tachycardia in June, 2003, he was readmitted to the hospital for an echocardiogram,

9

Centers

which was relatively normal and showed no significant valvular regurgitation. (Tr. 148-9,183-204). After two days in the hospital, Dr. Reddy noted that he was feeling a lot better and was relatively stable for discharge. (Tr. 204). No specific functional restrictions are given.

The plaintiff's breathing problems were evaluated on several occasions, with different results. Dr. Vaezy, the pulmonologist, obtained two breathing tests in March and May, 2003, which showed "moderate" chronic obstructive pulmonary disease, with FEV1 readings of 48 percent and 51 percent of predicted values respectively. (Tr. 144, 216, 220). After the first test, Dr. Vaezy reported that the plaintiff's prognosis was "guarded." (Tr. 216). A subsequent test, in July, 2003, produced even poorer results, and was interpreted as showing a "severe" obstructive impairment, with an FEV1 of only 36 percent of predicted. (Tr. 219). Dr. Vaezy did not list specific functional restrictions. A consultative examiner, Dr. William L. Coble, had previously performed a pulmonary function test as part of his examination in March, 2003, and obtained a result showing only minimal obstruction and minimal restriction, with an FEV1 of 71 percent. (Tr. 226). The ALJ noted that Dr. Vaezy's physical examination results were "rather benign," (Tr. 21), and also noted that a lung scan perfusion and ventilation study subsequently performed in June, 2003 showed no significant diagnostic abnormality. (Tr. 205). He chose to discount Dr. Vaezy's "guarded" prognosis in light of these findings. (Tr. 21). The ALJ did not note that a pulmonary function test performed at the same time showed an FEV1 only 41

10

Centers

percent of predicted values prior to bronchodilation, and improving to 52 percent after bronchodilation (Tr. 194), or Dr. Vaezy's subsequent July, 2003 results.

The Commissioner's Listing of Impairment 3.02A provides for a finding of disability for chronic obstructive pulmonary disease "from any cause" when an individual of the plaintiff's stated height of 65 inches (Tr. 40, 194, 219, 221)[1] has an FEV1 equal to or less than 1.25 liters. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Section 3.02A (2004). The plaintiff's two most recent pulmonary function tests showed FEV1 results of 1.26 and 1.11 liters respectively before bronchodilation. (Tr. 194, 219).

While these results by themselves might not be sufficient to meet the requirements of a <u>longitudinal</u> record as set out in the Introduction to Listing 3.00, the Introduction also states that "[e]ven if an individual does not show that his or her impairment meets the criteria of these Listings, the individual may have an impairment(s) equivalent in severity to one of the Listed impairments or be disabled because of a limited residual functional capacity."

In view of the fact that the consultative physical examiner, Dr. Coble, did not have access to the full series of breathing tests, and that neither the state agency reviewing physicians or the ALJ mentioned the less favorable pulmonary function tests (Tr. 21, 237-8, 241), a remand will be required in order to assess the impact of this testing in light of the listing.

---

[1] Dr. Coble measured the plaintiff's height as 66.8 inches (Tr. 223), which would be even more favorable to the plaintiff in terms of meeting the Listing.

11

Centers

Although a remand will be required on this issue, the Court notes in passing that the plaintiff's primary issue on appeal, that the ALJ had a heightened duty to develop the record because he had a non-attorney representative, is unpersuasive in the present case in light of the ALJ's fairly extensive colloquy with the non-attorney representative at the administrative hearing about additional records that were needed (Tr. 36-9, 51), as well as the Sixth Circuit's discussion of the issue in Born v. Secretary of Human Services, 923 F.2d 1168, 1172 (6th Cir. 1990). Of course, on remand, plaintiff's current counsel may introduce additional evidence regarding other impairments.

The decision will be remanded for further consideration.

This the __24__ day of August, 2005.

G. WIX UNTHANK
SENIOR JUDGE